This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: May 28, 2026**

**No. S-1-SC-40598**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROMAN CERNA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**David A. Murphy, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Solicitor General
Albuquerque, NM

for Appellee

**DECISION**

**ZAMORA, Justice.**

**{1}** Defendant Roman Cerna challenges his conviction for first-degree willful and deliberate murder. He raises four issues. First, he argues the State presented insufficient evidence of the identity of the shooter and of the shooter's deliberate intent to commit murder. Second, he contends the district court committed plain error by allowing a detective to testify as to his opinion that Defendant was the shooter. Third, he

argues the prosecutor committed misconduct by misstating the law and evidence in closing arguments. Finally, he asserts cumulative error deprived him of a fair trial.

**{2}** We agree with Defendant's contention that the State failed to prove Defendant acted with deliberate intent, which is the mens rea required to support a conviction for first-degree willful and deliberate murder. We conclude there is no merit in Defendant's remaining issues. Because we resolve these issues under well-settled law, we exercise our discretion to decide this case by nonprecedential decision pursuant to Rule 12-405(B) NMRA. We reverse and remand to the district court for entry of judgment on second-degree murder.

## I.  BACKGROUND

**{3}** At approximately 1:00 a.m. on July 12, 2020, Defendant shot twenty-three-year-old Chance Elkshoulder (Victim) in the parking lot of the Dank Smoke Shop in Albuquerque, New Mexico. The shooting and the events leading up to it were captured on the shop's security camera footage. The footage showed Victim and Defendant arrive at the shop at nearly the same time. Defendant rode a motorcycle; Victim was the passenger in a white sedan. Defendant parked his motorcycle at the outer edge of the parking lot and walked into the shop, where he rummaged through his backpack. Victim walked into the shop a few moments later while Defendant was crouched on the floor, rummaging through his bag. Victim purchased something at the counter. Defendant left the shop without purchasing anything, and Victim left soon after.

**{4}** Defendant walked to his motorcycle, and Victim walked toward the white sedan. Victim watched Defendant as he walked. The footage shows Victim approach the passenger side of the sedan, then start walking toward Defendant. Defendant turned to face Victim, with his right hand inside his backpack, and walked to meet Victim in the middle of the parking lot. Both men walked toward Defendant's motorcycle. Defendant took a few steps back, away from Victim, and fired multiple shots, grazing Victim on the forearm and striking him twice in the chest. Defendant drove away on his motorcycle. Victim later died of his injuries.

**{5}** The initial police investigation did not reveal a suspect. Several months after the homicide, a Crime Stoppers tip came in naming Defendant as the man in the security camera footage. The tipster was Darin Armijo, the step-grandfather of Defendant's child. Armijo regularly saw Defendant during custody exchanges. Armijo testified that he remembered seeing Defendant on the day of the shooting, because that day was Armijo's birthday, and he picked up Defendant's child to attend his birthday dinner. When he saw a news broadcast of the Crime Stoppers bulletin, Armijo recognized Defendant "immediately." He also recognized the distinctive shoes Defendant was wearing in the Crime Stoppers bulletin; they were the same shoes Defendant wore when he dropped off his son with Armijo on the day of the shooting.

**{6}** Based on the foregoing evidence, Defendant was charged with first-degree murder. At trial, the jury also heard from a detective who testified that he had reviewed the security camera footage and identified a unique hairline shared by Defendant and

the person in the footage. The jury, having been instructed on both first- and second-degree murder, convicted Defendant of first-degree murder. The district court sentenced Defendant to life imprisonment. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

**{7}** Defendant contends the evidence supporting his conviction for first-degree willful and deliberate murder was insufficient in two respects: first, the evidence did not prove Defendant was the shooter; and second, the evidence did not prove Defendant acted with the requisite mens rea of deliberate intent. Although we hold there was sufficient evidence identifying Defendant as the shooter, we conclude that the State did not meet its burden to prove beyond a reasonable doubt that Defendant acted with deliberate intent.

### 1. Standard of review

**{8}** We defer to the jury when reviewing claims of insufficient evidence, "view[ing] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Revels*, 2025-NMSC-021, ¶ 57, 572 P.3d 974 (quoting *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056). We ask "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt *beyond a reasonable doubt* with respect to *every element* essential to a conviction." *State v. Garcia*, 1992-NMSC-048, ¶ 25, 114 N.M. 269, 837 P.2d 862 (internal quotation marks and citation omitted).

**{9}** Although we defer to the jury as factfinder, we also recognize "the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 87, 487 P.3d 880. When reviewing the sufficiency of the evidence, we do not substitute our "judgment for that of the jury," but we must "ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Flores*, 2010-NMSC-002, ¶ 3 (quoting *Garcia*, 1992-NMSC-048, ¶ 27). "This responsibility to ensure that the [s]tate has introduced sufficient evidence to justify a finding of guilt is founded on the constitutional requirement of due process." *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted).

### 2. The State presented sufficient evidence of identity

**{10}** Defendant's contention that the jury had insufficient evidence to identify him as the shooter does not warrant extended discussion. The jury watched the shooting on video; it reviewed security camera footage that showed the face of the shooter from multiple angles; it assessed still photographs of the shooter's face taken from that security camera footage; it considered various photographs of Defendant; and it

observed Defendant in court. From that information alone, the jury could capably determine that Defendant was the person who shot Victim.

**{11}** Yet the jury had more. Armijo testified that he had known Defendant for four years and saw him once or twice a week during custody exchanges. He "immediately" recognized Defendant as the person in the Crime Stoppers bulletin. He then recorded the newscast containing the Crime Stoppers bulletin to study it carefully and was left with "zero doubt" that the person pictured was Defendant.

**{12}** The jury also heard from a detective who identified Defendant by analyzing known photos of Defendant and comparing them against the security camera footage. The detective noted that Defendant appeared to be the man in the security camera footage, and he identified a "distinctive asymmetrical hairline" above the left eye of both the individual in the security camera footage and known photographs of Defendant. The detective called this "the unique identifier that stood out to me."

**{13}** On appeal, Defendant challenges the testimony of these additional witnesses. He attacks the detective's conclusion that the hairline is "distinctive" by claiming that "to be distinctive would require evidence that the feature is *uncommon* among Hispanic males." We reject this proposition. The jury, as finder of fact, was tasked with weighing the detective's testimony and could independently assess whether the hairline was distinctive enough to identify Defendant. "This Court will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses [or] reweighing the evidence." *State v. Smith*, 2025-NMSC-025, ¶ 18, 578 P.3d 1016 (internal quotation marks and citation omitted). Defendant also challenges the credibility of Armijo's testimony. We reject that challenge because, again, the credibility of the witness was a question for the jury that we will not disturb on appeal. *Id.* ¶¶ 18, 35; *see also* UJI 14-6006 NMRA (instructing that jurors "are the sole judges of the facts").

**{14}** By presenting security camera footage showing clear images of the offender, as well as corroborating evidence that Defendant was the individual depicted in that footage, we hold the State proved Defendant's identity beyond a reasonable doubt.

### 3.   The State did not present sufficient evidence of deliberate intent

**{15}** To support a conviction for first-degree willful and deliberate murder, the state must prove the defendant killed the victim "with the deliberate intention to take away the life" of the victim. UJI 14-201 NMRA. This mens rea element marks the distinction between first- and second-degree murder. *See State v. Adonis*, 2008-NMSC-059, ¶ 16, 145 N.M. 102, 194 P.3d 717 ("Second-degree murder differs from first-degree murder because, although it may be intentional, it is committed without the deliberation . . . required for first-degree murder. Thus, if the [s]tate merely proves that the accused acted rashly or impulsively, rather than deliberately, . . . then the facts would only support second-degree murder."). "The distinction differentiates between those killings that are the most heinous and reprehensible, and therefore deserving of the most serious punishment under this state's law, and those which, although 'intentional' in

some sense, lack the gravity associated with first degree murders." *Garcia*, 1992-NMSC-048, ¶ 19.

**{16}**   To prove a defendant had the deliberate intention to kill as required for first-degree murder, the state must introduce evidence that the defendant thought about the killing. *See State v. Balderama*, 2004-NMSC-008, ¶ 29, 135 N.M. 329, 88 P.3d 845 ("The specific intent required for first-degree [willful and deliberate] murder is a *deliberate* intent, which by definition involves careful thought and the weighing of the consideration for and against a proposed course of action, and does not describe every intentional killing."); *see also* UJI 14-201 ("The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action."). That is, the state must show "the slayer . . . weigh[ed] and consider[ed] the question of killing and the slayer's reasons for and against such a choice." UJI 14-201.

**{17}**   The state may, of course, rely on circumstantial evidence to prove deliberation. *See State v. Sosa*, 2000-NMSC-036, ¶ 9, 129 N.M. 767, 14 P.3d 32 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)). However, speculation cannot substitute for evidence. UJI 14-6006 NMRA ("Your verdict should not be based on speculation, guess, or conjecture."). It is not enough for the state to show that a defendant had "an opportunity to deliberate"; instead, "the burden remains on the [s]tate to produce evidence that tends to show that the killer actually did so." *Adonis*, 2008-NMSC-059, ¶ 22 (internal quotation marks and citation omitted).

**{18}**   Defendant contends the State presented no evidence he acted with deliberate intent. He points out that the State presented no evidence of motive or any relationship between Defendant and Victim that might give rise to a "possible basis" for deliberate intent, and it presented no evidence of the type of corroborating circumstances that have sufficed for a finding of deliberate intent in other cases, such as a "large number of wounds, . . . a prolonged struggle, . . . the defendant's own statements, . . . [a] plan to kill, or hot pursuit of the victim." *State v. Slade*, 2014-NMCA-088, ¶ 21, 331 P.3d 930 (internal quotation marks and citations omitted). The State responds by pointing to two facts: first, Defendant shot multiple times, fatally striking Victim twice; and second, Defendant rummaged through his bag for over a minute while inside the shop, shortly before shooting Victim. We examine these facts to determine whether, alone or in combination, they are sufficient to support an inference that Defendant shot Victim "as a result of careful thought and the weighing of the consideration for and against the proposed course of action." UJI 14-201.

**{19}**   The fact that Defendant fired several shots is not, in and of itself, sufficient to support an inference of deliberation. In *Adonis*, the defendant left his apartment and "rapidly fired several shots" at the victim with a handgun. 2008-NMSC-059, ¶ 4. Like in this case, the "[v]ictim was hit twice and ultimately died from his wounds." *Id.* We held that "[w]hile [the d]efendant did fire multiple shots, that alone does not indicate that [the d]efendant deliberated before shooting [the v]ictim." *Id.* ¶ 24. Similarly, in *State v. Tafoya*, the defendant fired at two individuals "in quick succession," killing one and

injuring the other. 2012-NMSC-030, ¶¶ 1, 6-7, 49, 285 P.3d 604. Absent any evidence of motive or any other indicators of deliberation, we held that the evidence of multiple gunshots was insufficient to support an attempted[1] first-degree murder charge. *Id.* ¶¶ 53-55. Instead, it was only sufficient to support a charge of attempted second-degree murder. *Id.* ¶ 55; *see also id.* ¶ 53 ("The void of evidence to support deliberate intent in this case is filled with evidence of rash and impulsive behavior.").

{20}   The fact that Defendant rummaged through his bag while inside the shop is not evidence that he deliberated before killing Victim. The State asserts that "[t]he jury could reasonably conclude that Defendant's rummaging . . . supported an inference of his deliberate intent" but offers no analysis or authority in support of this contention. We conclude that this argument is based on speculation. Defendant began rummaging in his bag before Victim entered the shop. When Victim entered, Defendant continued rummaging without appearing to look up or take notice of Victim. Defendant did not interact with Victim in any manner while rummaging, and he exited the shop before Victim left without giving any indication that he noticed Victim's presence in the shop. There is simply no evidence from which a juror could rationally infer that Defendant was considering whether to kill Victim while rummaging in the bag or even that he was aware of Victim at all.

{21}   The final question is whether these two pieces of evidence together amount to sufficient evidence that Defendant deliberated before shooting Victim. We conclude that they do not. As discussed previously, the first piece of evidence—multiple gunshots in quick succession—cannot form the basis of a finding of deliberate intent without additional evidence of the defendant's state of mind. *See Adonis*, 2008-NMSC-059, ¶¶ 4, 24; *Tafoya*, 2012-NMSC-030, ¶¶ 49, 53-55. And the additional evidence offered in this case—Defendant's behavior of rummaging through a bag before interacting with Victim in any way—is not evidence of Defendant's state of mind; instead, it is a behavior from which any inference about Defendant's state of mind would be purely speculative.

{22}   The paucity of evidence to show Defendant's deliberation is notable. Like in *Adonis*, the State presented no evidence of "lying in wait," specific animus toward Victim, or that Defendant "later indicated his deliberate intent to kill" Victim. 1992-NMSC-048, ¶ 24. Like in *Adonis*, Defendant fired the shots rapidly, with no delay between the shots, and the State presented no other evidence of Defendant's state of mind. Thus, like in *Adonis*, we conclude this "scant evidence" of Defendant's state of mind "was simply insufficient to allow a rational fact finder to conclude that Defendant acted deliberately, rather than rashly or impulsively, in killing Victim." *Id.* ¶ 24. We hold that the State failed to meet its burden to prove beyond a reasonable doubt that Defendant committed the killing with deliberate intention.

{23}   Because we vacate Defendant's first-degree murder conviction only on the basis that there was insufficient evidence of deliberate intent, the elements of second-degree

---

[1] The district court had already granted a directed verdict motion as to the first-degree murder charge, *Tafoya*, 2012-NMSC-030, ¶ 50, leaving only the sufficiency of the evidence for attempted first-degree murder at issue on appeal.

murder have been met. *See* NMSA 1978, § 30-2-1(B) (1994) ("Murder in the second degree is a lesser included offense of the crime of murder in the first degree."). The jury was instructed on second-degree murder, and provocation was not at issue in this case. Therefore, we have the discretion to remand for resentencing for second-degree murder. *Revels*, 2025-NMSC-021, ¶¶ 40-47; *State v. Haynie*, 1994-NMSC-001, ¶¶ 4-5, 116 N.M. 746, 867 P.2d 416; *see also Tafoya*, 2012-NMSC-030, ¶ 55 (remanding for resentencing on attempted second-degree murder after vacating attempted first-degree murder conviction for insufficient evidence of deliberation).

**{24}**   We therefore vacate Defendant's first-degree murder conviction and remand to the district court for entry of judgment on second-degree murder.

## B.   The District Court Did Not Commit Plain Error by Allowing a Detective to Offer His Opinion as to Defendant's Identity

**{25}**   Defendant challenges the admission of the detective's testimony identifying Defendant based on the detective's review of the security camera videos and still images. The parties agree that the alleged error was unpreserved and that therefore the standard of review is plain error. We agree that error in the admission of evidence, if unpreserved, is reviewed for plain error. Rule 11-103 NMRA ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."). "We will not reverse on the basis of plain error unless the error affected a substantial right of the defendant." *State v. Chavez*, 2024-NMSC-023, ¶ 10, 562 P.3d 521 (text only)[2] (citation omitted). "To find plain error, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted).

**{26}**   Under Rule 11-701 NMRA, a lay witness may offer opinion testimony if it is "helpful . . . to determining a fact in issue." Rule 11-701(B). Defendant contends that the detective's identification testimony was inadmissible under Rule 11-701 because it was not helpful to the jury. Defendant relies entirely on *State v. Chavez*, in which the Court of Appeals determined the district court abused its discretion by allowing an officer to opine that the defendant in a surveillance video was holding a gun because, based on "her 'training and experience,'" the "'dark object' in [the d]efendant's hand could only have been 'one thing.'" 2022-NMCA-007, ¶ 40, 504 P.3d 541. In *Chavez*, the Court of Appeals held the officer's testimony was unhelpful to the jury "because the jury was just as capable as the officer of determining what the video depicted." *Id.* ¶ 40.

**{27}**   *Chavez* is distinguishable from this case. In *Chavez*, the defendant's identity was not at issue. *Id.* ¶ 10 ("[The d]efendant conceded that he fired the fatal shots, [and] the key questions at trial as to the killing were whether it was a crime at all and, if so, whether it was first degree murder or a less serious offense."). Thus, *Chavez* did not apply the legal standard from *State v. Sweat*, 2017-NMCA-069, 404 P.3d 20, for

---

[2]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text itself otherwise unchanged.

determining whether a lay witness may offer an opinion as to the identity of a defendant based on video or other images. Instead, *Chavez* recognized and applied the rule from *People v. Gharrett*, 2016 IL App (4th) 140315, ¶ 76, 53 N.E.3d 332, for determining whether "a witness may identify *an object* appearing in a video." *Chavez*, 2022-NMCA-007, ¶ 41 (emphasis added). Moreover, having reversed on other grounds, the *Chavez* Court did not reach the question of whether the error in that case rose to the level of plain error. *Id.* ¶ 39.

**{28}**     Under the legal standard articulated in *Sweat*, lay opinion testimony as to the identity of a person seen in a video or photograph is admissible when "there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." 2017-NMCA-069, ¶ 22 (quoting *People v. Thomson*, 2016 IL 118667, ¶ 49, 49 N.E.3d 393). *Sweat* identified five factors that may be relevant to this determination, any one of which is sufficient to admit the testimony. 2017-NMCA-069, ¶ 22. The fourth factor is "whether the defendant had altered his or her appearance prior to trial." *Id.* (text only) (citation omitted). In this case, Defendant wore a mustache and goatee at trial but was cleanshaven in the security camera footage. Because Defendant had altered his appearance prior to trial, the fourth *Sweat* factor was satisfied, and the testimony was admissible under Rule 11-701.

**{29}**     This case is similar to *State v. Gwynne*, 2018-NMCA-033, ¶¶ 7, 28, 32-33, 417 P.3d 1157, where the Court of Appeals upheld the admission of a law enforcement officer's identification of the defendant based on the officer's study of videos and still images of a suspect and comparison of those images to known photographs of the defendant. Like in *Gwynne*, the detective in this case reviewed video footage, studied still images taken from that footage, and compared those images to known photographs of Defendant. Through that comparison, the detective identified a distinctive characteristic common to both the individual in the video and Defendant. Like in *Gwynne*, we conclude this process was helpful to the jury and therefore admissible under Rule 11-701. *Gwynne*, 2018-NMCA-033, ¶¶ 28, 32-33; *see also State v. Armendariz*, S-1-SC-40273, dec. ¶ 22 (N.M. June 12, 2025) (nonprecedential) ("Detective Fernandez's study of the visual evidence, including viewing the video evidence frame-by-frame, provided something to the jury that the jury didn't have the ability to do." (text only)). Because we hold that the detective's testimony was admissible under Rule 11-701, it was decidedly not plain error for the district court to admit the testimony.

## C.     Prosecutorial Misconduct

**{30}**     Defendant argues that the prosecutor committed misconduct in closing argument by (1) misstating the law regarding the distinction between first- and second-degree murder and (2) relying on improper emotional appeals and misstating the evidence. Because we have vacated Defendant's first-degree murder conviction for lack of deliberate intent, we do not reach the issue of whether the prosecutor misstated the distinction between first- and second-degree murder.

**{31}** As to Defendant's claim that the prosecutor relied on improper emotional appeals, we do not find that the prosecutor committed misconduct. Defendant takes issue with the prosecutor calling Victim's sister—an eyewitness to Victim's murder—a "trauma victim" and characterizing Armijo's relationship with Defendant as "intimate." Because Defendant did not object to these characterizations, we review them for fundamental error. *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348.

**{32}** We do not perceive any error, fundamental or otherwise, in the prosecutor's chosen terminology. "[C]losing argument is inherently conversational," *id.* ¶ 19, and prosecutors are given "reasonable latitude in their closing statements," *id.* ¶ 25. It was not unreasonable to argue that Victim's sister was traumatized, given that she witnessed Victim get shot. UJI 14-5001 NMRA (noting jurors may "infer the existence of another fact" from a fact in evidence). Nor was it unreasonable to argue that Armijo had an intimate relationship with Defendant, given his testimony that they saw each other once or twice a week over four years. These statements did not constitute fundamental error.

**{33}** Defendant also asserts the prosecutor committed misconduct by arguing Defendant "very deliberately alter[ed] his appearance to try and cover up [the] distinctive feature" of his hairline by shaving his head prior to trial. This is the only statement of the prosecutor to which Defendant objected at trial. Accordingly, we review this statement for abuse of discretion. *Sosa*, 2009-NMSC-056, ¶ 26. "Discretion is the authority of a district court judge to select among multiple correct outcomes. . . . If proper legal principles correctly applied may lead to multiple correct outcomes, deference is given to the district court judge." *State v. Ferry*, 2018-NMSC-004, ¶ 2, 409 P.3d 918.

**{34}** In response to Defendant's objection, the district court ruled that the prosecutor was "within the bounds" of proper argument because the fact of Defendant's changed appearance was in evidence. As the district court observed, Defendant "appears differently than . . . in the photographs because of the haircut." The district court noted that both parties had "some room for argument on the issue." The district court's ruling was reasonable under the circumstances and was not an abuse of discretion.

**{35}** In sum, we hold the prosecutor did not commit misconduct in closing argument.

### D. Cumulative Error

**{36}** Defendant also alleges that cumulative error deprived him of a fair trial. Having vacated Defendant's first-degree murder conviction for insufficient evidence and determined that there was no error in the conduct of the trial, we hold that there was no cumulative error. *See State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814 ("Because we have vacated all convictions for which we found error, and there is otherwise no error to accumulate, we conclude that the defendant received a fair trial and that the doctrine is not applicable in this case.").

## III.    CONCLUSION

**{37}** For the foregoing reasons, we vacate Defendant's conviction for first-degree willful and deliberate murder and remand to the district court for entry of judgment on second-degree murder.

**{38}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**