**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-058**

**Filing Date: April 18, 2016**

**Docket No. 33,823**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**JESS CARPENTER,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Ray Twohig
Albuquerque, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

**{1}** Defendant, Jess Carpenter, appeals his conviction for involuntary manslaughter. Defendant argues that there is insufficient evidence to support the fourth element of the jury instruction given at trial—that he committed an unlawful act not amounting to a felony. Defendant also contends that the State's failure to prove each element of involuntary manslaughter implicates his constitutional right to a jury trial. We conclude that the evidence, assessed against the elements of the charged crime, is sufficient to support Defendant's involuntary manslaughter conviction and that Defendant was not denied his

1

right to a jury trial. We affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

**{2}**      On the evening of May 20, 2011, Defendant and his friend, Joe Darras, were out drinking at three Artesia establishments. After leaving the third establishment, at approximately 1:30 a.m. on May 21, 2011, the men went to Defendant's house. At some point between 1:30 a.m. and 2:00 a.m., Defendant called 911 and reported that he shot his friend and that his gun had gone off accidentally. Eddy County Sheriff's deputies arrived at Defendant's residence shortly after 2:00 a.m. Defendant told one deputy that he and Darras had a problem with someone at the bar and they were going to get their guns and take care of it, then the gun accidentally went off. Darras' body was found in Defendant's bedroom. He had been shot in the head.

**{3}**      Defendant was taken into custody. His blood was drawn at approximately 5:46 a.m. and his blood alcohol content was 0.116 grams per milliliter. Defendant was charged with second degree murder, contrary to NMSA 1978, § 30-2-1(B) (1994), and negligent use of a deadly weapon, contrary to NMSA 1978, § 30-7-4(A)(2) (1993). The case proceeded to a jury trial.

### A.      Defendant's Testimony at Trial

**{4}**      Defendant testified that Darras had an altercation with someone at the last establishment the two visited and that on the way back to Defendant's house, Darras was still upset about the incident and was going on and on about it. Both men were under the influence of alcohol. Defendant thought he could get Darras to drop the issue if Defendant got his guns and told Darras he would go back after the people from the bar. He expected Darras to tell him to forget about it. Defendant thought he could then lock the guns up.

**{5}**      When Defendant and Darras arrived at Defendant's house, Defendant got out of Darras' truck, went into his bedroom, got a shotgun from his closet, and got a pistol from a dresser drawer. He placed the shotgun by his bed and the pistol in the back of his pants. As Darras came into the bedroom and asked Defendant what he was doing, Defendant decided he would toss the pistol on the bed so that he did not have it on him as Darras approached. As Defendant pulled the gun out of his pants, he heard a loud boom and saw that Darras had been shot in the head. Defendant tried to stop the bleeding and realized that Darras was not alive. Defendant called 911 and waited for police to arrive.

**{6}**      Defendant admitted that he was familiar with firearms, that he had hunted with his family, and he had taken a gun safety course as a child. As an adult, Defendant practiced shooting and hunted. Defendant testified that on the night that Darras was killed, the pistol should not have fired unless the hammer was cocked back, and that to his knowledge he never cocked the hammer back. Defendant did admit that at some point as he removed the pistol from his pants, it must have been pointed toward Darras, since Darras was shot in the

2

head. Defendant also admitted that his drinking had impaired his judgment and that he should not have been handling his guns that night.

## B.      Involuntary Manslaughter

**{7}**      Under the provisions of NMSA 1978, Section 30-2-3(B) (1994), "involuntary manslaughter" is "the unlawful killing of a human being without malice . . . committed in the commission of an unlawful act not amounting to felony, *or* in the commission of a lawful act[,] which might produce death in an unlawful manner or without due caution and circumspection." (Emphasis added.) The jury was instructed that in order to convict Defendant of involuntary manslaughter, it had to find beyond a reasonable doubt that:

    1.      [D]efendant pointed a loaded pistol at . . . Darras while  [Defendant] was under the influence of alcohol;

    2.      [D]efendant should have known of the danger involved by pointing a loaded pistol at . . . Darras while [D]efendant was under the influence of alcohol;

    3.      [D]efendant acted with a willful disregard for the safety of others;

    4.      [D]efendant committed an unlawful act not amounting to a felony;

    5.      [D]efendant's act caused the death of . . . Darras; [and]

    6.      This happened in New Mexico on or about the 21 day of May, 2011.

The involuntary manslaughter instruction given at trial tracks the uniform jury instruction on manslaughter but then added that fourth element not contained in UJI 14-231 NMRA. It is not clear from the record how this additional element was added to the instruction. However, Defendant did not object to it at trial.

**{8}**      A jury found Defendant guilty of negligent use of a deadly weapon and involuntary manslaughter, a lesser included offense of second degree murder. Prior to sentencing, the district court determined that Defendant's conviction for negligent use of a deadly weapon was subsumed within his conviction for involuntary manslaughter and dismissed that charge. This appeal followed.

## II.      DISCUSSION

**{9}**      On appeal Defendant argues that there was insufficient evidence to support an added fourth element to the involuntary manslaughter instruction. Defendant also asserts that affirming his conviction with this added element would violate his right to a trial by jury. We address these arguments in turn.

3

**A.     Sufficiency of the Evidence**

**{10}**     "When reviewing a challenge to the sufficiency of the evidence, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cordova*, 2016-NMCA-019, ¶ 16, 366 P.3d 270 (internal quotation marks and citation omitted), *cert. granted*, 2015-NMCERT-008, __ P.3d __. "We must view the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447.

**{11}**     Defendant argues that there was insufficient evidence to support the added element that he committed an unlawful act not amounting to a felony. We disagree. Defendant's argument rests on the faulty premise that the added element is an essential element of involuntary manslaughter. Defendant does not dispute that the evidence was sufficient for the remaining elements.

**{12}**     After briefing was completed in this case, the United States Supreme Court decided the question of "how a court should assess a challenge to the sufficiency of the evidence in a criminal case when a jury instruction adds an element to the charged crime and the Government fails to object." *Musacchio v. United States*, __ U.S. __, __, 136 S. Ct. 709, 713 (2016). In *Musacchio* the defendant was indicted under 18 U.S.C. § 1030(a)(2)(C) (2008), which provides that a person commits a crime when he "intentionally accesses a computer without authorization *or* exceeds authorized access," and in doing so "obtains . . . information from any protected computer." *Musacchio*, __ U.S. at __, 136 S. Ct. at 713 (omission in original) (internal quotation marks and citation omitted). The Court noted that "[t]he statute thus provides two ways of committing the crime of improperly accessing a protected computer: (1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly." *Id.*; *see* § 1030(e)(6) (defining "exceeds authorized access" (internal quotation marks omitted)). The defendant was charged with conspiring to make unauthorized access to a computer. *Musacchio*, __ U.S. at __, 136 S. Ct. at 713.

**{13}**     The proposed jury instructions identified the conspiracy count as involving unauthorized access to protected computers, and did not require the jury to find that the defendant also conspired to exceed authorized access to protected computers. *Id.* However, the trial court diverged from the indictment and the proposed instructions and instructed the jury "that § 1030(a)(2)(C) makes it a crime for a person to intentionally access a computer without authorization *and* exceed authorized access." *Musacchio*, 136 S. Ct. at 714 (internal quotation marks and citation omitted). The government did not object to the instruction. *Id.* A jury found the defendant guilty of conspiring to make unauthorized access to a computer. *Id.*

**{14}**     The defendant challenged the sufficiency of the evidence to support his conspiracy

4

conviction. *Id.* at 713. The Supreme Court rejected the defendant's argument that "the sufficiency of the evidence should be assessed against the erroneous jury instruction that included the additional element." *Id.* at 714. The Court recognized that in reviewing for the sufficiency of the evidence, the reviewing court "makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.' " *Id.* at 715 (citation omitted). "The reviewing court considers only the legal question whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{15}**     The Court concluded that "the sufficiency of the evidence should be assessed against the elements of the charged crime." *Id.* at 713. "[I]f the jury instruction requires the jury to find [guilt on] those elements . . . beyond a reasonable doubt, the defendant has been accorded the procedure that this Court has required to protect the presumption of innocence." *Id.* at 715 (internal quotation marks and citations omitted). In that case, the addition of an element by using the word "and" in the instruction rather than eliminating the option, as permissible by the statute's use of the word "or," did not make the additional element an essential element under the statute. *Id.* at 714. Thus, "[t]he Government's failure to introduce evidence of [the] additional element [did] not implicate the principles that sufficiency review protects." *Id.* at 715. We believe *Musacchio* is dispositive here.

**{16}**     In the present case, Defendant does not dispute that he was properly charged with the statutory elements for involuntary manslaughter as a lesser included offense to second degree murder; that he was given a meaningful opportunity to defend himself against those charges; or that the evidence was sufficient to convict him of the statutory elements of involuntary manslaughter. *See* § 30-2-3(B) (defining "involuntary manslaughter" as "the unlawful killing of a human being without malice . . . committed in the commission of an unlawful act not amounting to felony, *or* in the commission of a lawful act[,] which might produce death in an unlawful manner or without due caution and circumspection." (emphasis added)). For the reasons explained in *Musacchio*, we reject Defendant's assertion that the statutory element added to the involuntary manslaughter instruction is an essential element under the statute.

**{17}**     As a final matter, Defendant does not dispute that the State presented sufficient evidence to support the jury's verdict. We agree. The evidence presented at trial was that Defendant was familiar with firearms and that on May 21, 2011, while Defendant handled a loaded firearm under the influence of alcohol the firearm discharged in the direction of Darras, who was hit in the head by the discharged bullet and killed. Based on this evidence, a reasonable jury could have found the essential elements of involuntary manslaughter beyond a reasonable doubt.

**B.     Right to a Jury Trial**

**{18}** Defendant argues that the State's failure to present any evidence that he committed an unlawful act not amounting to a felony implicates his constitutional right to a jury trial. This argument, like Defendant's sufficiency of the evidence challenge, relies on the added element in the given instruction—the commission of an unlawful act, not amounting to a felony—as an essential element of involuntary manslaughter. Defendant's constitutional argument is also without merit.

**{19}** The Fourteenth Amendment requires due process in criminal proceedings involving state statutes, and together with the Sixth Amendment right to a trial by jury, entitles "a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (alteration, internal quotation marks, and citation omitted).

**{20}** Thus, if a jury is instructed on the elements of the crime with which the defendant is charged, and the instruction requires the jury to find those elements beyond a reasonable doubt, "the defendant has been accorded the procedure that this Court has required to protect the presumption of innocence." *Musacchio*, 136 S. Ct. at 715. Where an instruction includes all of the elements of the charged crime and an alternative element, the alternative element does not become an essential element simply because it is not identified as an alternative element in the given instruction. *See id.* We conclude that Defendant's right to a jury trial under the federal constitution is not implicated under the circumstances of this case.

**{21}** To the extent Defendant broadly asserts that he may be entitled to greater protection under the New Mexico Constitution, he provides this Court with no argument in support of this assertion, and for this reason we do not engage in a separate analysis to address his conviction under the New Mexico Constitution. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating that this Court has no duty to review an argument that is not adequately developed); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (same).

### III. CONCLUSION

**{22}** For the foregoing reasons, we affirm Defendant's conviction for involuntary manslaughter.

**{23}** **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____

**LINDA M. VANZI, Judge**