This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37753**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERT WOODY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jim Darnell, P.C.
Jim Darnell
James Jeep Darnell
Cris Estrada
El Paso, TX

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Robert Woody appeals from his conviction of misdemeanor criminal sexual contact (CSC), in violation of NMSA 1978, Section 30-9-12(D) (1993). Defendant raises two issues on appeal: (1) there was insufficient evidence to support his

conviction, and (2) the district court abused its discretion in denying his motion for a new trial based on newly discovered evidence. We affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we briefly set out the following facts and reserve discussion of additional facts as necessary for our analysis. At trial, Victim testified that he scheduled an appointment with Defendant, a neurologist, after he started experiencing blackouts, seizures, and memory problems. Victim was eighteen years old at the time. Upon entering the examining room at Defendant's office, Defendant directed Victim to remove his shirt. The examination did not seem out of the ordinary at first, with Defendant feeling Victim's neck and seeing how Victim walked. However, Defendant then directed Victim to remove his pants and underwear and began rubbing Victim's penis and testicles, asking Victim if he liked the way Defendant was touching him. Defendant also held and squeezed Victim's testicles, which Victim explained were prosthetics he received after a dog mauled his genitalia as an infant. This lasted for approximately two minutes. When Victim got dressed after the examination, Defendant kissed Victim on the neck and told him that he loved him. Defendant also hugged Victim, pressing his erect penis against Victim in the process. No other witnesses were present during the examination. Defendant testified in his defense, largely disputing Victim's version of the events that took place in the examination room and insisting that any examination of Victim's genitals was medically proper.

**{3}** The jury found Defendant guilty of one count of CSC. Victim read a victim impact statement at Defendant's sentencing several months later, in which he described various traumatic events that occurred both before and after his appointment with Defendant. Following Victim's testimony, Defendant moved for a new trial on the basis that the traumatic events Victim revealed in his victim impact statement called his testimony at trial into question. The district court denied Defendant's motion, and this appeal followed.

**DISCUSSION**

**Sufficiency of the Evidence**

**{4}** We first address Defendant's sufficiency argument. Section 30-9-12(A) defines CSC as "the unlawful and intentional touching of or application of force, without consent, to the unclothed intimate parts of another who has reached his eighteenth birthday[.]" Section 30-9-12(E), in turn, defines "intimate parts" as "the primary genital area, groin, buttocks, anus or breast." Consistent with the applicable uniform jury instruction, UJI 14-915 NMRA, the district court instructed the jury to find Defendant guilty of CSC if they found beyond a reasonable doubt that, among other things: (1) "[D]efendant touched or applied force to the unclothed penis and testicles of [Victim] without [Victim's] consent"; (2) "[D]efendant used physical force"; and (3) "[D]efendant's act was unlawful[.]" *See* UJI 14-915, use note 3 (requiring the instruction to "[n]ame one or more of the following

parts of the anatomy touched: 'groin,' 'anus,' 'buttocks,' 'breast,' 'mons pubis,' 'penis,' 'testicles,' 'mons veneris,' or 'vulva' "). The district court also provided the jury with the definition of "testicles" listed in UJI 14-981 NMRA, which states that "[t]he 'testicles' are the male sex glands which are located in a sac known as the scrotum. The testicles are round or oval and produce the male sperm." *See* UJI 14-915, use note 3 (requiring the district court to provide a definition of the described body parts if a definition is provided in UJI 14-981 or the jury requests one).

**{5}**     Defendant's sufficiency challenge focuses on the first element of the jury instructions requiring the jury to find that he touched Victim's penis and testicles. Defendant does not claim there was insufficient evidence that he touched Victim's penis. However, because the jury instructions required the State to prove that Defendant touched Victim's penis *and* testicles, Defendant argues the State failed to present sufficient evidence to support the first element because Victim had prosthetic testicles incapable of "produc[ing] the male sperm." *See* UJI 14-981. In other words, Defendant argues that the State was required to prove that Victim's testicles satisfied the given definition of testicles in addition to the underlying elements of CSC.

**{6}**     The State counters that the instruction's use of the word "and" effectively created an unnecessary element (i.e., that Defendant touched Victim's penis *in addition to* his testicles, as opposed to merely touching one *or* the other). The State contends that the purported insufficiency of the evidence underlying this unnecessary element does not require reversal so long as the State proved that Defendant touched *one* of those body parts, either of which indisputably constitute "intimate parts" under Section 30-9-12(E). Further, the State contends that even if it was required to prove that Defendant touched Victim's penis *and* testicles due to the wording of the jury instructions, the fact that Victim's testicles could not produce sperm did not render the evidence insufficient because the definitional instruction did not add an essential element. Concluding that the former argument is dispositive, we need not address the latter.

**{7}**     In reviewing a challenge to the sufficiency of the evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted). "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *Id.* (internal quotation marks and citation omitted). Hence, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{8}**     While we generally adhere to the principle that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured[,]" *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674 (internal quotation marks and citation omitted), the United States Supreme Court has made clear that "[the law-of-the-case]

doctrine does not bear on how to assess a sufficiency challenge when a jury convicts a defendant after being instructed . . . on all charged elements of a crime plus an additional element." *Musacchio v. United States*, ___ U.S. ___, ___, 136 S. Ct. 709, 716 (2016). In such cases, "a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." *Id.* at 715.

**{9}** This conclusion stems from the principle that a reviewing court's sufficiency review is only "a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a meaningful opportunity to defend against the charge against him and a jury finding of guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). Such a review does not depend on how the jury was instructed, but rather "the legal question whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "When a jury finds guilt after being instructed on all elements of the charged crime plus one more element, the jury has made all the findings that due process requires." *Id.* Thus, "failure to introduce evidence of an additional element does not implicate the principles that sufficiency review protects." *Id.*

**{10}** This Court has adopted the reasoning of *Musacchio*. *See State v. Carpenter*, 2016-NMCA-058, ¶ 16, 374 P.3d 744; *see also State v. Lente*, 2019-NMSC-020, ¶ 54, 453 P.3d 416 (quoting *Musacchio* in setting out sufficiency review standard). In *Carpenter*, the defendant was charged with second degree murder and ultimately convicted of the lesser included offense of involuntary manslaughter. 2016-NMCA-058, ¶¶ 1, 3. In addition to instructing the jury on the statutory elements of involuntary manslaughter (as provided in the applicable uniform jury instruction), the district court instructed the jury to find that "[the d]efendant committed an unlawful act not amounting to a felony[.]" *Id.* ¶ 7. It was unclear why the district court departed from the uniform jury instruction to require this additional element. *Id.*

**{11}** On appeal, the defendant challenged his conviction on the basis that insufficient evidence supported this additional element. *Id.* ¶ 9. Relying on *Musacchio*, this Court affirmed the defendant's conviction despite any purported insufficiency of the evidence supporting the extraneous element. *Id.* ¶ 16. Similar to the defendant in *Musacchio*, we noted,

> [the d]efendant d[id] not dispute that he was properly charged with the statutory elements for involuntary manslaughter as a lesser included offense to second degree murder; that he was given a meaningful opportunity to defend himself against those charges; or that the evidence was sufficient to convict him of the statutory elements of involuntary manslaughter.

*Id.* ¶ 16.

**{12}** Taking our lead from *Musacchio* and *Carpenter*, we reject Defendant's contention that the State's alleged failure to prove that Defendant touched Victim's testicles *in addition to* his penis requires reversal. Defendant does not dispute that the jury was charged with finding all the statutory elements to convict him of CSC (i.e., Defendant unlawfully and intentionally touched or applied force to Victim's "unclothed intimate parts" without consent). *See* § 30-9-12(A). Defendant does not claim that the evidence was insufficient for a rational juror to convict Defendant of CSC based on his touching of Victim's penis. Nor does Defendant claim he was deprived a meaningful opportunity to mount a defense against the charge.

**{13}** Rather, Defendant argues that *Musacchio* and *Carpenter* are distinguishable because the grand jury indictment in this case did not differ from the jury instructions in that it also "requir[ed] both elements to be satisfied beyond a reasonable doubt." Defendant further argues that the instant case is distinguishable because the given instructions "did not diverge at all" from the uniform jury instructions. We disagree with both contentions.

**{14}** Regarding Defendant's first point, we note that the grand jury indictment did not "requir[e] both elements to be satisfied beyond a reasonable doubt." Instead, the relevant portion of the indictment alleged that Defendant "without consent, touch[ed] or appl[ied] force to the unclothed intimate parts of [Victim], to wit: his testicles and penis[.]" Defendant provides no authority for the proposition that an indictment specifying multiple acts that, if proven, independently constitute a violation of the same statute requires the State to prove each act in order to obtain a conviction for the charged crime, and in fact such a position is inconsistent with the purpose of an indictment. *See State v. Blea*, 1973-NMCA-013, ¶ 11, 84 N.M. 595, 506 P.2d 339 ("The purpose of an indictment or information is: First, to furnish an accused with such a description of the charge against him as will enable him to make his defense and to avail himself of his conviction or acquittal against a subsequent prosecution for the same offense; and second, that the court may be informed as to the facts alleged so it may determine whether the facts are sufficient to support a conviction, if one should be had."). "When a party does not cite authority to support an argument, we may assume no such authority exists." *State v. Vandever*, 2013-NMCA-002, ¶ 19, 292 P.3d 476. We, therefore, reject Defendant's contention that the indictment required the State to prove that Defendant touched Victim's penis *and* testicles in order to convict him of CSC. *See State v. Ponce*, 2004-NMCA-137, ¶ 36, 136 N.M. 614, 103 P.3d 54 (declining to address an assertion where the defendant provided no authority in support of that assertion).

**{15}** Regarding Defendant's second point, we note that UJI 14-915 does not specify whether the allegedly touched intimate parts must be listed in the disjunctive or conjunctive, so for Defendant to state that the given instructions "did not diverge at all" from the uniform jury instruction is inaccurate. Moreover, Defendant does nothing to explain why this purportedly distinguishable fact should change the outcome of this case. As in *Musacchio* and *Carpenter*, Defendant does not dispute that the indictment included all the statutory elements for CSC, that he was given a meaningful opportunity

to defend himself against that charge, or that the evidence was insufficient to convict him of the statutory elements of CSC. *See Musacchio*, ___ U.S. at ___, 136 S. Ct. at 715-16; *Carpenter*, 2016-NMCA-058, ¶ 16. Having been given no principled reason to depart from precedent, we reject Defendant's sufficiency argument.[1]

**Motion for New Trial**

**{16}** Defendant next challenges the district court's denial of his motion for a new trial based on Victim's testimony at Defendant's sentencing hearing. Specifically, Defendant points to Victim's testimony that he (1) "hallucinated that he had been sexually molested on another occasion [after meeting with Defendant but before the trial] and was hospitalized as a result" and (2) was "molested when he was less than twenty[-]six . . . days old and [was] involved in the prosecution . . . of his father for that assault."[2] Finding no abuse of discretion, we affirm the district court's denial of Defendant's motion for a new trial.

**{17}** "Motions for new trials on the basis of newly discovered evidence are not encouraged." *State v. Desnoyers*, 2002-NMSC-031, ¶ 26, 132 N.M. 756, 55 P.3d 968, *abrogated on other grounds as recognized by State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264, 119 P.3d 144.

> A motion for a new trial on grounds of newly-discovered evidence will not be granted unless the newly-discovered evidence fulfills all of the following requirements: 1) it will probably change the result if a new trial is granted; 2) it must have been discovered since the trial; 3) it could not have been discovered before the trial by the exercise of due diligence; 4) it must be material; 5) it must not be merely cumulative; and 6) it must not be merely impeaching or contradictory.

*State v. Garcia*, 2005-NMSC-038, ¶ 8, 138 N.M. 659, 125 P.3d 638. It is the defendant's burden to prove that the evidence met all six requirements. *See Desnoyers*, 2002-NMSC-031, ¶ 26. We review the denial of a motion for a new trial for a "manifest abuse of discretion" and will only reverse if the district court's ruling is "arbitrary, capricious or beyond reason." *Id.* (internal quotation marks and citation omitted).

**{18}** Here, the district court found, among other things, that the newly discovered evidence failed the sixth requirement because it was merely impeaching. We agree. Evidence is merely impeaching if its sole purpose is to discredit the veracity of a witness's testimony or the accuracy or authenticity of documentary evidence. *See State v. Roybal*, 1928-NMSC-055, ¶ 17, 33 N.M. 540, 273 P. 919 ("The term

---

[1] Because Defendant does not contend that evidence was insufficient to convict him of the statutory elements of CSC, we need not undertake a full sufficiency review. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that this Court need not consider undeveloped arguments).

[2] We take these quotations from Defendant's brief. The State points out some factual inaccuracies in Defendant's characterization of Victim's testimony at the sentencing hearing. We need not delve into these inaccuracies, however, because Defendant's argument fails even if his characterization of the testimony is accurate.

'impeachment' is confined by legal usage to efforts which tend primarily to show that the witness is not worthy of belief, in narration; in short, that he lies."); *Impeach*, *Black's Law Dictionary* (11th ed. 2019) (defining "impeach," in relevant part, as "[t]o discredit the veracity of (a witness) . . . [or] challenge the accuracy or authenticity of (a document)"); *cf. State v. Layne*, 2008-NMCA-103, ¶ 13, 144 N.M. 574, 189 P.3d 707 ("Impeachment . . . gives a party the opportunity to discredit a witness, so the jury properly has a way to determine whether a witness is untruthful or inaccurate." (internal quotation marks and citation omitted)).

**{19}** Defendant argues the newly discovered evidence is not merely impeaching "because it would show either: 1) that [Victim] could have imagined the occurrence based on hallucinations . . . or 2) that [Victim] used the same modus operandi that he had utilized in the past to convict his father and/or to avoid living situations he did not like." Defendant claims that proving either of these theories goes beyond impeachment because it would "corroborate[ Defendant's] account . . . that his actions were simply a medical examination that was misperceived by [Victim.]" In support of his argument, Defendant relies on *State v. Volpato*, 1985-NMSC-017, 102 N.M. 383, 696 P.2d 471. In *Volpato*, the newly discovered evidence came from a witness claiming that she saw two Hispanic men leave the scene of a murder at the defendant's pharmacy—testimony which corroborated the defendant's claim that two Hispanic men shot his wife in the course of a robbery. *Id.* ¶¶ 3, 5-6. The district court denied the defendant's motion for a new trial on the basis that it was "merely contradictory of other evidence." *Id.* ¶ 8. Our Supreme Court disagreed, stating, "While it is certainly true that [the witness's] testimony was contradictory of the [s]tate's evidence, her testimony regarding events occurring outside the store also corroborate[d the defendant's previously uncorroborated] account of events inside the store." *Id.* ¶ 9.

**{20}** In contrast to *Volpato*, the newly discovered evidence in this case does not directly corroborate Defendant's testimony. Rather, it would only corroborate Defendant's testimony in the sense that it could theoretically discredit Victim's account of what happened. This is the very definition of impeachment. Indeed, Defendant's own arguments on appeal belie his assertion that this evidence would serve to assist Defendant in any other way other than to impeach Victim's credibility. Defendant's briefing is replete with arguments along the lines that he is entitled to "a full testing of [Victim's] reliability and credibility[,]" "[t]he believability of . . . [Victim] was clearly the greatest issue before the jury[,]" and the newly discovered evidence would "compromise [Victim's] reliability to discern what really happened" or his "credibility to tell the truth." Because Defendant fails to show that the newly discovered evidence is not merely impeaching and cannot, therefore, satisfy all six requirements for a new trial based on newly discovered evidence, we need not address the other factors and conclude that the district court did not abuse its discretion by denying Defendant's motion.

**CONCLUSION**

**{21}** For the foregoing reasons, we affirm.

{22}     IT IS SO ORDERED.

JACQUELINE R. MEDINA, Judge

WE CONCUR:

J. MILES HANISEE, Chief Judge

KRISTINA BOGARDUS, Judge