IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2024-NMCA-066

Filing Date: July 29, 2024

No. A-1-CA-40387

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

EMA FERRAN-SANDOVAL,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Karen L. Townsend, District Court Judge

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Solicitor General
Albuquerque, NM

for Appellee

The Law Office of Ryan J. Villa
Richelle Anderson
Albuquerque, NM

for Appellant

OPINION

MEDINA, Judge.

**{1}** The issues raised in this appeal arise from the use of a uniform jury instruction regarding child abuse that includes an element and terms that the child abuse statute does not. A jury convicted Defendant Ema Ferran-Sandoval of permitting the child abuse of a four-year-old Child, contrary to NMSA 1978, Section 30-6-1(D), (E) (2009). Defendant argues that the omission of the terms "parent," "guardian," and "custodian," in element 4 of the child abuse instruction, UJI 14-612 NMRA, rendered the instruction incomplete and ambiguous and constituted fundamental error because those terms inform the jury what it means to "accept responsibility" for a child. Defendant also

contends that the evidence was insufficient to sustain her conviction because the State failed to prove Defendant accepted responsibility for Child's welfare.

{2}     We affirm because the Legislature did not include the terms "parent," "guardian," or "custodian," in Section 30-6-1(D) and accepting responsibility for the welfare of a child is not an element of permitting child abuse. We decline to address Defendant's sufficiency argument because it pertains only to the nonessential element of accepting responsibility, and "the sufficiency of the evidence should [only] be assessed against the elements of the charged crime." *State v. Carpenter*, 2016-NMCA-058, ¶ 15, 374 P.3d 744 (internal quotation marks and citation omitted).

{3}     Defendant's Daughter had a girlfriend (Girlfriend) who lived with her four-year-old son, the victim in this case, in Defendant's home on and off from 2017 until May 2, 2019. Defendant's Daughter also lived in Defendant's home. Girlfriend described Defendant as being "pretty much like my second mom" that took care of her and testified that Defendant was always worried about Child and attempted to intervene when she heard her Daughter fighting with her Girlfriend in their room.

{4}     On May 2, 2019, Defendant's Daughter allegedly broke Child's arm while he was taking a shower. Daughter and her Girlfriend argued and eventually Defendant drove Girlfriend and her Child to Girlfriend's mother's home. A short time later, the following text exchange between Girlfriend and Defendant took place:

> Girlfriend:     My mom wants me to take him to the hospital and wants me to tell them what[']s going on.
>
> Defendant:     OMG huh. Just say bad relationship and homeless. And don[']t give names I guess.
>
> Girlfriend:     Just don't tell [Daughter] anything just tell her I'm gone and that's all that matters if she asks where you took me.
>
> Defendant:     Ok. Be safe.

{5}     Girlfriend took Child to the hospital where a physician, Dr. Leslie Strickler (Physician), admitted him as a patient. Physician examined Child and later testified that he had been subjected to severe abuse and clinically diagnosed the abuse as "torture." Physician also testified that based on the medical history she obtained, the abuse occurred while Child was residing in Defendant's residence.

{6}     Child had injuries from his head to his toes. Child had "multiple blunt force trauma impacts to his head and face" that he attributed to Defendant's Daughter punching him. Child was covered in bruises and had scars that indicated he had been beaten and scratched with different implements, was visibly malnourished, and had multiple broken bones including a finger, his arm, and four vertebrae. An MRI revealed a chronic subdural hematoma between the brain and the skull. According to the

Physician, many of Child's injuries would have been visible for weeks prior to her examination.

**{7}** An investigating detective testified that Child's injuries were readily apparent. Officers also obtained text messages that Defendant sent to Girlfriend regarding the abuse that was taking place in Defendant's home. On April 30, 2019, three days prior to the incident in which Child's arm was broken, Defendant texted Girlfriend the following:

> I can[']t handle it ANYMORE. You need to save YOUR SON. [H]e is a baby with nob[o]dy else to help him.

The following day, Defendant texted Girlfriend:

> You need to go to and take your son to protect him TODAY. I can[']t stand his torture ANYMORE before [Daughter] or you or all [o]f us go to jail.

**{8}** The State charged Defendant with permitting child abuse under Section 30-6-1(D). At trial, the State argued that Defendant knew of the abuse but had not reported it, had not sought medical attention for Child, and had not taken any other meaningful action. The State drafted its jury instruction patterned after UJI 14-612, and the jury convicted Defendant. This appeal followed.

## DISCUSSION

**{9}** Defendant argues the district court provided the jury with an incomplete instruction. Defendant did not object to preserve her argument below—we therefore review this issue for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. When conducting fundamental error review, we "determine if a defendant's conviction shocks the conscience because either (1) the defendant is indisputably innocent, or (2) a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Astorga*, 2015-NMSC-007, ¶ 14, 343 P.3d 1245 (text only) (citation omitted). When applying fundamental error analysis to deficient jury instructions, "we must determine whether a reasonable juror would have been confused or misdirected not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted). Under this standard, we will "reverse when the misinstruction leaves us with no way of knowing whether the conviction was or was not based on the lack of the essential element." *Id.* (internal quotation marks and citation omitted). To the extent we are required to interpret the child abuse statute, we do so de novo. *See State v. Granillo*, 2016-NMCA-094, ¶ 11, 384 P.3d 1121.

**{10}** To discern if the instructions omitted terms that rendered the instruction incomplete, as Defendant contends, we look first to the elements of the child abuse statute and then examine the instruction provided to the jury. The jury convicted

Defendant under Section 30-6-1(D), which defines the crime of child abuse as follows: "Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be: (1) placed in a situation that may endanger the child's life or health; (2) tortured, cruelly confined or cruelly punished; or (3) exposed to the inclemency of the weather."

**{11}** The jury was instructed that in order to convict Defendant of child abuse, it had to find beyond a reasonable doubt that:

> 1.    [Defendant] saw indications that [Child] was physically abused while he was in the same house as her and she did nothing to end it;
>
> 2.    By engaging in the conduct described in Paragraph 1, [Defendant] permitted [Child] to be placed in a situation that endangered the life or health of [Child];
>
> 3.    [Defendant] showed a reckless disregard for the safety or health of [Child]. To find [Defendant] showed a reckless disregard, you must find that [Defendant's] conduct was more than merely negligent or careless. Rather, you must find that [Defendant] permitted a substantial and unjustifiable risk of serious harm to the safety or health of [Child]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for safety or health of [Child];
>
> 4.    [Defendant] was a custodian of [Child], or [Defendant] had accepted responsibility for [C]hild's welfare;
>
> 5.    [Child] was under the age of eighteen (18);
>
> 6.    This happened in New Mexico on or about or between April 8, 2019 and May 2, 2019.

**{12}** Defendant argues the district court provided the jury with an incomplete instruction because it omitted the terms "parent" and "guardian" listed under element 4 of UJI 14-612 (stating element "[4. (*name of defendant*) was a parent, guardian or custodian of the child, or (*name of defendant*) had accepted responsibility for the child's welfare]"). According to Defendant, these terms would have informed the jury of what it means to have "accepted responsibility" for Child. Specifically, Defendant argues this "omission materially altered the instruction by creating ambiguity in the phrase 'accepted responsibility' and impermissibly broadened the scope of criminal liability for this offense." We disagree and explain.

**{13}** We review jury instructions to "determine whether a reasonable juror would have been confused or misdirected by the jury instruction, and whether the instruction

through omission or misstatement, fails to provide the juror with an accurate rendition of the relevant law." *State v. Hertzog*, 2020-NMCA-031, ¶ 11, 464 P.3d 1090 (text only) (citation omitted). While we typically adhere to the principle that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured," *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674 (internal quotation marks and citation omitted), the United States Supreme Court has made clear that "[the law-of-the-case] doctrine does not bear on how to assess a sufficiency challenge when a jury convicts a defendant after being instructed—without an objection by the Government—on all charged elements of a crime plus an additional element." *Musacchio v. United States*, 577 U.S. 237, 245 (2016). We adopted and applied the reasoning of *Musacchio* in *Carpenter*, 2016-NMCA-058, ¶¶ 12-15.

**{14}**    Here, as occurred in both *Musacchio* and *Carpenter*, the jury received an instruction that covered the elements of a crime but added an additional one. The instructions covered the elements of permitting child abuse, but added the extra element that a person accused of the crime must have accepted responsibility for the child. Section 30-6-1(D) applies when "a *person* knowingly, intentionally or negligently, and without justifiable cause" causes or permits a child to suffer abuse. (Emphasis added.) It does not contain a requirement that a defendant be a parent, guardian, custodian, or that they otherwise accept responsibility for a child in any way. *See State v. Reed*, 2005-NMSC-031, ¶ 50, 138 N.M. 365, 120 P.3d 447 ("The Legislature has not indicated that [Section 30-6-1(D)] . . . is restricted to persons having a special relationship with the child, such as a parent or guardian. Our courts have held that the statute applies to any person who *causes or permits* a child to be placed in a situation that endangers the child's life. Reading the statutory language to apply to all adults, regardless of the relationship, appears consistent with the legislative intent to protect children from abuse." (emphasis added) (citations omitted)).

**{15}**    Both Defendant and the special concurrence attempt to draw a distinction between criminal liability for causing child abuse and for permitting child abuse. Defendant argues, "To ignore the word 'permitting' in the statute would create a felony liability for 'every person' 'who knows or has a reasonable suspicion that a child' is being abused and fails to report it." The special concurrence also states that our holding requires all citizens to "affirmatively insert themselves whenever a child is in danger— even when the child and the abuser are strangers to them and regardless of the risk of personal peril—or face up to three years imprisonment." Maj. op. ¶ 31. We disagree for several reasons. First, our precedent unequivocally establishes criminal liability for causing or permitting child abuse, regardless of a defendant's relationship with a victim. Second, the UJI makes clear that the standard for causing or permitting child abuse requires reckless disregard for the well-being of a child resulting in great harm, which excludes any citizen from liability. We explain.

**{16}**    It is clear, as outlined in *Reed*, that the child abuse statute applies to any *person*, whether charged with causing or permitting child abuse. 2005-NMSC-031, ¶ 50. Further, we note that the Legislature intentionally included a relationship requirement in another subsection of the same statute—Section 30-6-1(B), which details abandonment

of a child. *See id.* ("Abandonment of a child consists of the *parent*, *guardian* or *custodian* of a child intentionally leaving or abandoning the child under circumstances whereby the child may or does suffer neglect." (emphasis added)). We presume that the Legislature intentionally omitted a relationship or responsibility requirement from Subsection (D) and "will not read into a statute . . . language which is not there, particularly if it makes sense as written." *State v. Gonzalez*, 2017-NMCA-080, ¶ 19, 406 P.3d 534 (internal quotation marks and citation omitted); *see State v. Jade G.*, 2007-NMSC-010, ¶ 28, 141 N.M. 284, 154 P.3d 659 ("[W]hen the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional."). "[T]he Legislature knows how to include language in a statute if it so desires." *State v. McWhorter*, 2022-NMCA-011, ¶ 8, 505 P.3d 865 (internal quotation marks and citation omitted).

**{17}**    We further note that permitting child abuse requires that a defendant act in more than a "merely negligent or careless" manner in failing to report. *See* UJI 14-612. To convict a person of permitting child abuse, a jury must find that a defendant "showed a *reckless disregard* for the safety or health" of a child, and that the defendant permitted "a substantial and unjustifiable risk of serious harm to the safety or health" of the child "that would [normally] cause any law-abiding person to behave differently than [the defendant] out of concern for the safety or health of [the child]." *Id.* (emphasis added); *see State v. Consaul*, 2014-NMSC-030, ¶¶ 35-40, 332 P.3d 850. Contrary to the special concurrence's assertion, the standard of reckless disregard differs from that of NMSA 1978, Section 32A-4-3 (2005, amended 2021), which establishes the duty to report child abuse and the misdemeanor crime of failure to report the same. Failing to report occurs when a party "knows or has a reasonable suspicion that child is an abused or neglected child" but fails to alert law enforcement. Section 32A-4-3(A). While the standard of knowledge or reasonable suspicion does apply to any citizen, the standard for permitting child abuse has a narrower scope. To convict a defendant of permitting child abuse, the State must prove the defendant acted in more than "merely negligent or careless" manner. *See* UJI 14-612; *see also Consaul*, 2014-NMSC-030, ¶ 36 ("[T]he Legislature did not mean to punish ordinary acts of negligence when it amended the child abuse statute to require proof of recklessness."). To convict, the defendant must have permitted "a substantial and unjustifiable risk of serious harm to the safety or health of" a child that any "law-abiding person would recognize under similar circumstances" and act differently out of "concern for the safety or health of" the child. UJI 14-612 (element 3). The knowledge of threat of substantial harm to the child under Section 30-6-1 goes beyond the knowledge or reasonable suspicion of abuse of neglect under Section 32A-4-3. *See Consaul*, 2014-NMSC-030, ¶¶ 28, 35-40.

**{18}**    We thus conclude that the jury instruction contained an element that itself impermissibly *narrows* the scope of criminal liability for permitting child abuse under Section 30-6-1, and ask the UJI Committee to consider amending UJI 14-612. Further, the alleged deficiency in the jury instruction is not fundamental error because it arose in a nonessential element. *See Samora*, 2016-NMSC-031, ¶ 27 (noting that we only "reverse when the misinstruction leaves us with no way of knowing whether the conviction was or was not based on the lack of the *essential* element" (emphasis added)

(internal quotation marks and citation omitted)). Moreover, we do not view Defendant's conviction as fundamentally unfair because the State had to prove an element beyond the scope of the statute to convict Defendant. *See Astorga*, 2015-NMSC-007, ¶ 14.

**{19}** Finally, we decline to address Defendant's claim that the State presented insufficient evidence to prove she had accepted responsibility for Child's welfare because that is not an element of the crime, and we only assess the sufficiency of the evidence against the elements listed in the criminal statute, none of which Defendant disputes. *See Carpenter*, 2016-NMCA-058, ¶ 14. This tailored inquiry ensures "that a defendant receives the minimum that due process requires: a meaningful opportunity to defend against the charge against [them], and a jury finding of guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). Here, the jury instruction otherwise properly covered the essential elements of Section 30-6-1(D), thereby affording Defendant due process. *See id.* ¶ 15 ("If the jury instruction requires the jury to find guilt on those elements beyond a reasonable doubt, the defendant has been accorded the procedure that [the United States Supreme Court] has required to protect the presumption of innocence." (alterations, omission, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{20}** For the foregoing reasons, we affirm.

**{21} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**I CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge, concurring in result**

**DUFFY, Judge (concurring in result).**

**{22}** This case could have—and should have—been resolved on the issue actually raised by Defendant: whether the jury instruction given at trial on the charge of permitting child abuse amounted to fundamental error because two words were omitted from element 4 ("parent" and "guardian"). Instead, the majority opinion goes much further, holding that an element that has been part of the "permitting" child abuse jury instruction for more than thirty years is improper and must be disregarded. For the reasons set forth below, I disagree with the majority opinion's conclusion that UJI 14-612 element 4 is an incorrect statement of the law, and I am likewise not persuaded that it is necessary to reach that issue. Consequently, while I agree that Defendant's conviction should be affirmed, I cannot join in the majority opinion's broader holding.

**I.      UJI 14-612**

**{23}**    The majority opinion adopts a novel argument raised in the State's answer brief—that the UJI for "permitting" child abuse is incorrect in requiring the State to prove that the defendant "was a parent, guardian or custodian of the child, or the defendant had accepted responsibility for the child's welfare." *See* UJI 14-612 use note 7. This has been an element of the jury instruction for this charge since 1993, and based on the nature of the charge and the statutory language, it is a correct statement of the law.

**{24}**    New Mexico's child abuse statute, Section 30-6-1(D), states that "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, *causing* or *permitting* a child to be: (1) placed in a situation that may endanger the child's life or health; (2) tortured, cruelly confined or cruelly punished; or (3) exposed to the inclemency of the weather." (Emphasis added.) "Our courts have repeatedly stated that 'causing' and 'permitting' child abuse are distinct theories, one premised upon active abuse (causing), the other upon the passive act of allowing the abuse to occur (permitting)." *State v. Nichols*, 2016-NMSC-001, ¶ 32, 363 P.3d 1187 (internal quotation marks and citation omitted). For over twenty years, each theory had its own jury instruction. *See* UJI 14-604 NMRA (2000) (setting out the elements of "causing" child abuse without great bodily harm or death); UJI 14-605 NMRA (2000) (setting out the elements of "permitting" child abuse without great bodily harm). In 2015, our Supreme Court adopted revised child abuse jury instructions following its decision in *Consaul*, 2014-NMSC-030. As part of these revisions, the Court withdrew the separate instructions for "causing" and "permitting" and replaced them with a single uniform instruction that can be used, with appropriate modifications, for either theory. *See* UJI 14-612 use note 3; *see also Nichols*, 2016-NMSC-001, ¶ 32 (stating that "ordinarily these theories must be charged in the alternative").

**{25}**    In spite of this change in form, the instruction for "permitting" child abuse has always contained an essential element requiring the jury to find that the defendant "was a parent, guardian or custodian of the child, or the defendant had accepted responsibility for the child's welfare." *See* UJI 14-612 use note 7 (stating that element 4, which requires the jury to find that the defendant had a special relationship with the child, should be used "when there is evidence that the defendant permitted child abuse"); *see also* UJI 14-605 (2000) (element 3); UJI 14-605 (1993) (element 3). This element is not required or included when a defendant is charged with "causing" child abuse. *See* UJI 14-612 use note 7. This reflects both a commonsense and a legal distinction between the two theories—anyone can cause child abuse, but not everyone can be held criminally liable for allowing abuse to occur.

**{26}**    This distinction is well-recognized in criminal law. "Most crimes are committed by affirmative action rather than by non-action." 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.2 (3d ed. 2023). The "causing" theory of child abuse is premised on active abuse, and *Reed* rightly held that any person can be held criminally liable under that theory, regardless of their relationship to the child. *Reed*, 2005-NMSC-031, ¶ 50. But "permitting" child abuse is premised on a failure to act—an omission. *See Nichols*,

2016-NMSC-001, ¶ 32. An omission can constitute a crime only where the defendant had a legal duty to act. *State v. Greenwood*, 2012-NMCA-017, ¶ 35, 271 P.3d 753; 1 LaFave, *supra*, § 6.2(a) ("For criminal liability to be based upon a failure to act it must first be found that there is a duty to act—a legal duty and not simply a moral duty."). Under New Mexico's common law, "[t]he general rule is that a person does not have a duty to act affirmatively to protect another person from harm." *Estate of Eric S. Haar v. Ulwelling*, 2007-NMCA-032, ¶ 14, 141 N.M. 252, 154 P.3d 67 (internal quotation marks and citation omitted)). New Mexico also recognizes an exception to this general rule: parents and persons in loco parentis have a duty to protect their minor children. *State v. Orosco*, 1991-NMCA-084, ¶¶ 26-27, 113 N.M. 789, 833 P.2d 1155; *see* 1 LaFave, *supra*, § 6.2(a)(1). Thus, the UJIs since their inception have correctly recognized that "causing" abuse does not require a relationship to the child, but "permitting" abuse is limited to persons with the sort of relationship that carries an affirmative duty to act to protect the child.

**{27}** The majority opinion concludes that our Supreme Court rejected any special relationship requirement two decades ago in *Reed*. *Reed*, however, was a "causing" case, not a "permitting" case. The Court was not asked to consider whether a person without a special relationship to the child may be convicted of "permitting" child abuse. *See Fernandez v. Farmers Ins. Co.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)). Even so, *Reed* contains broad language in its analysis that appears to implicate "permitting" as well as "causing." For example, the Court stated that "[t]he Legislature has not indicated that [Section 30-6-1(D)] . . . is restricted to persons having a special relationship with the child, such as a parent or guardian. Our courts have held that the statute applies to any person who causes or permits a child to be placed in a situation that endangers the child's life." *Reed*, 2005-NMSC-031, ¶ 50 (citation omitted).

**{28}** *Reed* was correct insofar as our Courts have not required a special relationship in a "causing" case, but it appears that New Mexico courts have never previously encountered a "permitting" case involving a nonparent. The facts of this case are a matter of first impression in that regard. For this reason, as our Supreme Court recently reminded us, this Court has authority to examine the UJI and the reach of the child abuse statute, as well as the broad language of *Reed*, with fresh eyes. *See State v. Mares*, 2024-NMSC-002, ¶¶ 35-44, 543 P.3d 1198 (discussing the principles that inform vertical stare decisis and stating that unless and until the New Mexico Supreme Court has applied a principle of law to the facts of a case "the Court of Appeals is not necessarily bound by our determination").

**{29}** The majority opinion declines to do so and reiterates the same statutory analysis offered in *Reed*. The majority, in essence, hangs its hat on a well-worn statutory construction maxim, i.e., that the Legislature expressly included a relationship requirement in another subsection of the statute, Section 30-6-1(B), but not in Subsection (D). Subsection (B) imposes criminal liability for abandoning a child, and from a practical and legal perspective, the only category of persons who could be held

criminally responsible for abandoning a child are those with a legal responsibility to the child. Subsection (D), however, addresses two separate theories of liability that implicate two different categories of persons, and for that reason I do not view the absence of such language in Subsection (D) to be dispositive here. *See Nichols*, 2016-NMSC-001, ¶ 32. Rather, I think resolution of the issue presented in this case turns on what it means to "permit" child abuse, and whether the Legislature intended to abrogate the common law discussed above when it said in Section 30-6-1(D) that child abuse "consists of *a person* knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be[] . . . placed in a situation that may endanger the child's life or health." *See Reed*, 2005-NMSC-031, ¶ 49; *see also Sims v. Sims*, 1996-NMSC-078, ¶¶ 22-23, 122 N.M. 618, 930 P.2d 153 (holding that "[a] statute will be interpreted as supplanting the common law only if there is an explicit indication that the legislature so intended" and "adopt[ing] a strict rule that the common law must be expressly abrogated by statute"). The relevant statutory analysis would need to consider whether the Legislature in adopting Section 30-6-1(D) intended to create a statutory duty that broadly applies to all persons.

**{30}**    By way of comparison, the language in Section 30-6-1(D) stands in contrast to Section 32A-4-3(A), which imposes a statutory duty to report child abuse on "every person." Section 32A-4-3(A) (stating that "[e]*very person* . . . who knows or has a reasonable suspicion that a child is an abused or a neglected child shall report the matter immediately" (emphasis added)). Our Supreme Court was asked to determine the scope of the statutory duty to report abuse and, after considering the language, history, and purpose of the statute as well as similar statutory schemes in other jurisdictions, concluded that all persons are subject to a duty to report child abuse under the Abuse and Neglect Act. *See State v. Strauch*, 2015-NMSC-009, ¶¶ 29-39, 345 P.3d 317. *Strauch* provides a useful example of the more robust analysis required to conclude that the Legislature intended to impose an affirmative duty to act on all persons.

**{31}**    Notably, the Legislature also designated a failure to report abuse as a misdemeanor offense. *See* § 32A-4-3(F). In light of this, it is also useful to consider how the majority opinion in this case significantly expands the scope of criminal liability for the same class of people. By eliminating the relationship requirement for "permitting" abuse, any person who knows a child is abused or neglected not only faces a misdemeanor charge if they fail to report, but also a third-degree felony charge if they fail to actively intervene. The majority has not attempted to reconcile the duplication in liability, nor have they acknowledged that their holding represents a significant expansion of the scope of duty previously recognized under New Mexico law. Under the majority opinion's view, all citizens are required to actively and affirmatively insert themselves whenever a child is in danger—even when the child and the abuser are strangers to them and regardless of the risk of personal peril—or face up to three years imprisonment. *See* NMSA 1978, § 31-18-15(A) (2016, amended 2024) (stating the basic sentence for a third-degree felony). The majority opinion does not persuade me that the Legislature intended such a result when it adopted the current child abuse statute in 1973.

**{32}** I am compelled to address one final point raised in the State's answer brief. The State argues that the UJI Committee may have included the relationship requirement in the "permitting" jury instructions in 1993 because at that time, a defendant could be convicted of child abuse under a civil negligence standard. The State continues that thread by saying that

> [t]he UJI Committee may have believed in 1993 that the jury had to find that the defendant owed some duty to a child—like that of a parent, guardian, or custodian—in order to convict. But the Supreme Court clarified in 2014 that recklessness is the minimum culpable mental state for child abuse. When a defendant acts recklessly or intentionally . . . there is no need to establish a separate duty. There is no longer any justification for the special relationship element.

The State appears to conflate culpable mental state and duty. Mental state evaluates the defendant's state of mind at the time of the criminal act; duty defines whether a defendant can be held criminally liable for a failure to act. The removal of the negligence standard from child abuse had no impact on the scope of a person's duty to act in protection of another or their liability for failure to do so.

**{33}** For all of these reasons, I would have rejected the State's invitation to strike the relationship requirement in UJI 14-612, and cannot agree with the majority opinion that a special relationship is not required in "permitting" cases under Section 30-6-1(D).

## II. Fundamental Error

**{34}** Defendant's conviction is nevertheless affirmable on the narrower issue advanced in her brief in chief. Defendant argues that the jury instruction given at trial amounted to fundamental error because it omitted the words "parent" and "guardian" from the relationship element and allowed the jury to convict if it found that Defendant was "a custodian of the child, or [Defendant] had accepted responsibility for the child's welfare." Defendant's argument is simply that the omission of these words deprived the jury of context necessary to guide its deliberations. I am not persuaded by Defendant's argument and do not believe the given instruction can be said to have resulted in juror confusion requiring retrial, particularly when the omitted alternatives are plainly not applicable. In point of fact, before the child abuse instructions were modified and merged in 2015 the use notes for the permitting instruction expressly stated that only the applicable alternative or alternatives should be included. *See* UJI 14-605 (2000) use note 3. Based on the facts of record, a jury could reasonably have concluded that Defendant was a custodian or had otherwise accepted responsibility for Child's welfare when they lived together in the same home and Defendant had previously expressed concern over her Daughter's treatment of Child.

**{35}** For this reason, I concur in the result reached by the majority opinion, but I cannot join the majority's analysis of the jury instructions or the child abuse statute.

**MEGAN P. DUFFY, Judge**